\*456]  \*William Govett successor to Tench Francis, late treasurer of the Delaware and Schuylkill Canal Navigation *against* John Reed and Standish Forde (trading under the firm of Reed and Forde) and Joseph Ball.

Awards may be set aside for error in law, or manifest error in fact.
Men having a lien, may relinquish it by their conduct.

THIS suit was brought on a note for 2500 dollars submitted by the defendants.  It was submitted to reference and the referees awarded to the plaintiff $4424 and 16 cents costs.  Several exceptions were filed to the report ; but upon the argument, all were abandoned, except the one following in these words.

The defendants were entitled to receive from the plaintiff the price or value of a body of land, the exact quantity of which is not ascertained ; but which was admitted by the plaintiff before the referees, to be at least 15 acres and 19 perches, and to have been contracted for by them, at the rate of 57l. 10s. Pennsylvania currency per acre ; and the defendants claimed a credit by way of set off against the plaintiff's demand for the purchase money or value of this land ; which, with interest, would have amounted to almost the whole sum reported by the referees in favour of the plaintiff ; the said referees mistaking the law and the right of the defendants, refused to give them a credit therefor.

Upon examination of the referees, and the evidence which was adduced to them, it appeared that on the 10th April 1792, when this canal company were incorporated, (3 St. Laws 272) Robert Morris was seised in fee of a large tract of land containing 270 acres, through which the canal was afterwards dug, with his consent, he being then the president of the said company.

On the 30th October 1794, Morris mortgaged this land, including the 15 acres and 19 perches in dispute, to the Insurance Company of Pennsylvania, to secure the payment of $30,000 and interest on the 13th October 1795.

The company had begun in 1793 to work on these 15 acres and 19 perches, which was part of what was called the Hill Farm, and the canal dug therein was completed in June 1795.

[Govett, Treasurer, *v.* Reed et al.]

On the 4th January 1796, Forde and Ball, two of the defendants, were elected directors of the company; and the former was peculiarly active in superintending the workmen at the canal, and managing the concerns of the stockholders. Forde died before the meeting of the referees, and his death was suggested on the record, before filing of the report.

*On the 15th March 1796, at a meeting of the directors [457* of the canal company, Morris and Forde being present as members of the board, a resolution was entered into, that the quantity of Morris's land occupied by the canal should be ascertained by the engineer, in order that a deed might be prepared for the same, at the agreed price of 57l. 10s. per acre.

On the 21st March 1796, a judgment was entered in this court by the Bank of Pennsylvania, for the use of the now defendants, against Robert Morris, for $20,990.

On the 30th June 1796, at a meeting of the directors of the company, Forde being present, a certificate of the engineer, Mr. Weston, was produced, ascertaining the quantity of land of Mr. Morris, used for the canal in the Hill Farm, to be 15 acres and 19 perches, and in the Springetsbury farm to be 7 acres 69 perches. Whereupon it was resolved, that the treasurer be directed to credit Morris for the amount of his lands occupied by the track of the canal, leaving a balance of $470, due to him; and afterwards,

On the 29th November 1796, Mr. Morris drew an order for these 470 dollars, at a meeting of the directors, Forde being present, directing the same to be charged to him for his share of tickets in the company lottery; when the same was accepted and the amount credited to him accordingly.

And on the 11th December 1797, Jonathan Penrose, esq. sheriff, sold and conveyed to Standish Forde and Joseph Ball, two of the present defendants, the whole of the 270 acres subject to the mortgage aforesaid, at and for the sum of $6,800, to hold to them as tenants in common in equal moieties, the same having been taken in execution at the suit of the bank of Pennsylvania, as the property of Robert Morris.

And on the 15th July 1800, satisfaction was entered on the mortgage, by the Insurance Company of Pennsylvania.

On this state of facts, Messrs. Levy and Dallas contended, that the report should be set aside.

It is almost wholly a question of law. By the giving of a mortgage, the legal estate is *eo instante* vested in the mortgagee. The right passes thereby; and the mortgagor is in a worse situation, than a tenant at will, who holds under a lease from the mortgagee, granted since the mortgage, without the privity of the mortgagee. Doug. 21, 270, (281.) The mortgagee may support ejectment, as well here, as in England. But still the equity of redemption continues in the mortgagor, which has always been considered as an estate in the land; for it may be

[Govett, Treasurer *v.* Reed et al.]

devised, granted, or entailed with remainders. And the person entitled to the equity of redemption is considered as the owner *of the land; and a mortgage in fee is considered as personal assets. 1 Atky. 605, Cosborne *v.* Scarp. Hence it follows, that the interest of the mortgagor, subject to the mortgage, may be levied on and sold upon judgments obtained against him; as was done in the present instance, and in various other cases. 4 Dall. 151. The judgment binds the equitable interest of the party, and the creditor succeeds to all his right therein. It is not denied, that a parol contract fairly executed, as far as it may be, before the lands become subject to incumbrances, will be binding on a subsequent purchaser, with notice. But here the lands were mortgaged, before any agreement was made, that the track of the canal should pass through them. The minute of the company of the 15th March 1796, contains no indication of any previous contract for the land; the price of the land is then fixed for the first time. The whole of the mortgage money became due on the 13th October 1795; the judgment was entered on the 21st March 1796, binding the equitable interest of Morris, in the land; and yet this illegal appropriation of the money by way of credit to Morris, in order to save a desperate debt, was not made until the 30th June 1796, in violation of the rights of the judgment creditors. If the damages had been assessed, under the 8th section of the act of 10th April 1792, (3 St. Laws 279,) by a writ of *ab quod damnum,* the company must have tendered, or paid the amount to the owner, before any title to the land could vest in the owner. They could not pretend to a set-off. But even at this time, it does not appear that Morris had been credited for the price of this land, further than can be collected from the minutes of June and November 1796. The state of the account, together with the company books, should have been submitted to the referees, as well as this court, for their inspection. Every person is bound to take notice of a judgment, as well as a mortgage, which may affect the party's interest in the land. No reservation was made in favour of the canal company at the sheriff's sale; nor are the vendees bound to make such reservation. By paying off the mortgage they succeed to the rights and interests of the mortgagees, and stand in their place.

But it will be urged, that the conduct of Mr. Forde, as one of the members of the board, will justify the application of the money to the credit of Mr. Morris. One having a prior lien, may postpone himself by misconduct. 9 Mod. 37. But it is now settled, that the mere attesting of a deed will not have this effect, unless there be fraud, or actual notice. Bro. Cha. Rep. 353. 3 Bac. 301, (Gwillem's.) We answer hereto, that every order of the board, is that of a majority; and it remains to be ascertained, that Forde concurred in the measure, or was even present at the time. Besides, if at the time he did not know his

*legal rights, he shall not be concluded thereby ; he was guilty of no wilful omission, and could gain nothing by it.

Upon the whole, if the referees have committed an error in point of law, in refusing the set off, and thereby materially injuring the defendants, the court will set aside their report. The court will go beyond the rule of set off, when injustice would otherwise be done. 4 T. R. 123, Mitchell *v.* Oldfield.

Messrs. Ingersoll and Condy answered, on the part of the directors of the canal company.

This court will not interpose, unless they are satisfied that there has been manifest error. The plaintiff's demand is undisputed, and it is incumbent on our adversaries to shew themselves clearly entitled to a set off. The case of Mitchell *v.* Oldfield depended on the exercise of the summary powers of the court, and is not applicable. Besides Lord C. J. ELLENBOROUGH in a later case, expressed a strong disinclination to extend the power of setting off debts, on general grounds of equity, beyond the line which the legislature had thought proper to mark out. 3 East 150.

Here the canal company contracted for this land previous to the mortgage and subsequent judgment. They began to work in 1793, and Mr. Morris being indebted to them for stock, it was considered mutually, as so much money paid on account of the purchase. The insurance company' were notified of the agreement by the publicity of the work done by their people on the land ; and if Morris had sold the land instead of mortgaging it, his vendees would be bound by the contract, on the consideration money being paid. Large sums of money had been expended in digging the canal through this land, with the assent of Mr. Morris while he was president of the company, and deeply interested in the undertaking. He had a lien on the land, which he might relinquish, but he could not rescind the contract, which he had maturely entered into. When one contracts to sell lands, the consideration money becomes personal estate. 2 Vez. 640. Even as to mortgages, they have ever been considered as personal assets. Executors or administrators only can sue for them ; and the husband of a feme mortgagee, may release the right of his wife, without her concurrence : the interest of a mortgagee has never been levied on under a judgment. What stronger traits can personal property exhibit of its true nature ?

The effect of mortgages here differs from those in England. With us, they are viewed as mere pledges to secure the payment of the money ; and another debt cannot be tacked thereto. 1 Dall. 142. A third mortgagee cannot squeeze out a second, by buying in a first mortgage. Morris might well have insisted that Forde and Ball should discharge the mortgage to the insurance *company, and of course those claiming under [*460 him had the same right. The title of the canal company relates back to the time of the contract. On the 15th March

1796, which was six days before the judgment, nothing remained to be done except the admeasuring the land with accuracy, Morris being indebted largely to the company. What interest then, was there to be bound by the judgment? Only $470 remained unsettled for, which was discharged in November following, with the full concurrence of Forde, who in the character of an agent, completed the contract. He was present at this meeting, and must be supposed to have assented thereto, unless the contrary be shewn.

It is idle to say, that the sheriff's vendees succeeded to the supposed rights of the mortgagees. They claim by no assignment, but were bound by the terms of sale to pay off the mortgage. As to Morris and those claiming under him, it is precisely the same, as if the premises had been struck off at $36,800.

Independently of these radical objections to the present motion, how can this pretended set-off be sustained? The suit is brought against Reed, Forde and Ball, jointly; and any debt, if due to Forde and Ball, cannot be set off against it. Forde also died before the reference met, and Ball could not set off his debt without the concurrence of his executors, who might possibly wish to retain this scintilla of claim to the 15 acres and 19 perches in his minor children. Besides the making of a paper title and payment of the consideration money are concurrent acts. Ball, it is true, might release his interest to an undivided moiety : but what becomes of the other moiety during the minority of Forde's children? Has any deed been made, or tendered, whereon a pretence of set off could be plausibly maintained? A full complete remedy is open to Ball and the children of Forde, if they have a title to the lands, by recovering the possession in an ejectment.

This court will not set aside the report of referees, unless a clear and palpable mistake has been committed either in law or fact, tending to manifest injustice. And such have been their uniform decisions. 1 Dall. 486. Motions like the present are similar to those made for new trials. 2 Dall. 55, 57, 58, 121. 4 Dall. 391.

Tilghman, C. J. after stating the several facts, delivered the unanimous opinion of the court.

The defendants in support of their exception to the award, contend, that their judgment of the 21st March 1796, was a lien on the interest of Robert Morris ; and consequently, that they had a right to receive from the canal company, the whole purchase money agreed to be given by them for the 15 acres and *461] *19 perches, which at that time was neither paid to Morris nor placed to his credit in account with the canal company. It appears, that there were on the 21st March 1796, and long before, accounts subsisting between Mr. Morris and

[Waln, Indorsee, *v.* Wilkins et al.]

the canal company ; but of the state of those accounts we are not well informed.

Several other points were also made and elaborately argued, concerning which, the court think it unnecessary to give an opinion : neither do they mean to intimate any opinion, whether a judgment creditor, whose debtor has contracted to sell his land before the judgment, but had not conveyed it, has any lien on the unpaid purchase money. The present case turns upon its own particular circumstances. For even if the defendants had the lien they contend for, it was in their power to relinquish it.

The referees seem to be of opinion, that they did relinquish it ; and the court cannot say, that they were wrong in their conclusion, since it was proved to them, that one of the defendants was present at meetings of the board of managers, when the money now claimed by them, was ordered to be placed to the credit of Robert Morris. If they gave their consent to these orders, it certainly amounted to a waiver of the claim now set up ; and if they did not consent, they might have given some evidence of their dissent. This is a fact of which the referees were judges. The principles on which the court proceeds, with regard to exceptions to awards, are well established. They will set aside an award, for error in law, or manifest error in fact. The law, as to the present exception, depends on the fact of the defendant's having consented to have this money placed to the credit of Robert Morris, in account with the canal company. If the referees were of opinion that such consent was given, the court are so far from thinking they were manifestly wrong, that it appears to them, they decided according to the weight of the evidence.

The judgment of the court is, that the report be confirmed.